COMFORT HOME BUILDERS, INC., ET AL., [1] Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Comfort Home Builders v. Commissioner
Docket Nos. 17592-94, 17594-94, 17595-94.
United States Tax Court
T.C. Memo 1995-225; 1995 Tax Ct. Memo LEXIS 227; 69 T.C.M. (CCH) 2679; May 23, 1995, Filed *227 Orders granting respondent's motions to dismiss for lack of jurisdiction will be entered in each docket. For respondent: Paul K. Voelker and Jordan S. Musen. DAWSON, PANUTHOS
DAWSON; PANUTHOS
MEMORANDUM OPINION DAWSON, Judge: These cases were assigned to Chief Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [2] The Court agrees with and adopts the opinion of the Chief Special Trial Judge, which is set forth below. OPINION OF THE CHIEF SPECIAL TRIAL JUDGE PANUTHOS, Chief Special Trial Judge: This matter is before the Court on respondent's motions to dismiss for lack of jurisdiction filed January 10, 1995. The issue for decision is whether petitioners lack capacity under Rule 60(c) to invoke this Court's jurisdiction. Background
J & A Enterprises, *228 Inc., Insulators, Inc., and Comfort Home Builders, Inc., were corporations organized under the laws of the State of Nevada. On February 27, 1992, the shareholders of J & A Enterprises, Inc., Insulators, Inc., and Comfort Home Builders, Inc., adopted separate resolutions to dissolve the corporations. On March 6, 1992, J & A Enterprises, Inc., and Insulators, Inc., filed certificates of dissolution [3] with the Nevada secretary of state resulting in their dissolution pursuant to Nev. Rev. Stat. Ann. sec. 78.580 (Michie 1994). [4] On March 24, 1992, Comfort Home Builders, Inc., was similarly dissolved. [5] References to petitioners are to J & A Enterprises, Inc., Insulators, Inc., and Comfort Home Builders, Inc., collectively. *229 In July 1993, respondent initiated an examination of petitioners' tax returns. These examinations included an interview conducted in September 1993. Respondent closed the examinations on March 22, 1994, without issuing 30-day letters to petitioners. On July 14, 1994, respondent issued separate statutory notices of deficiency to petitioners determining deficiencies in and additions to their Federal income taxes as follows: J & A Enterprises, Inc.
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1) Sec. 6655 1990
$ 34,709
$ 8,677.25
$ 2,045.22
1991
9,581
2,395.25
502.54
1992
2,502
625.50
102.41
Insulators, Inc.
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6655
1991
$ 82,740
$ 20,685
$ 4,339.68
Comfort Home Builders, Inc.
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6655
1991
$ 297,624
$ 74,406
$ 361.22
1992
29,564
7,391
1,209.79
Separate imperfect petitions were filed with the Court on September 22, 1994. An amended petition on behalf of each petitioner was filed with the Court on November 21, 1994. [6]
*230 As indicated, respondent moved to dismiss the petitions for lack of jurisdiction on the ground that, because petitioners were dissolved more than 2 years prior to the filing of the petitions herein, under Nevada State law they now lack capacity to invoke this Court's jurisdiction. Petitioners filed oppositions to respondent's motions to dismiss requesting that respondent withdraw the deficiency notices. Respondent's motions were calendared for hearing in Washington, D.C. Counsel for respondent appeared at the hearing and presented argument on the pending motions. Although petitioners were not represented at the hearing, they did file statements with the Court pursuant to Rule 50(c). [7] Petitioners contend that: The Respondent should not have standing to issue the Notice of Deficiency violating * * * [Nev. Rev. Stat. 78.585 (Michie 1994)]. The Petitioner should be permitted to contest said deficiency which are based on erroneous computations and information. If RESPONDENT'S Notice of Deficiency is valid against the defunct company, to surcharge the officers, then the petition to the Tax Court should be effective to entitle the officers to have their day in court, otherwise *231 the N.O.D. should be quashed, as it was issued 4 months after the 2 year deadline of the dissolution of the corporation * * *.
Discussion
Rule 60(c) states that the capacity of a corporation to engage in litigation in this Court shall be determined by the law under which the corporation was organized. Brannon's of Shawnee, Inc. v. Commissioner, 71 T.C. 108, 111 (1978); Condo v. Commissioner, 69 T.C. 149, 151 (1977); Great Falls Bonding Agency, Inc. v. Commissioner, 63 T.C. 304, 305 (1974). Because petitioners were organized in the State of Nevada, we look to the law of that State to determine whether petitioners possess the requisite capacity to invoke this Court's jurisdiction. Petitioners' capacity to engage in litigation is prescribed by Nev. Rev. Stat. Ann. sec. 78.585 (Michie *232 1994), which provides: The dissolution of a corporation does not impair any remedy or cause of action available to or against it or its directors, officers or shareholders arising before its dissolution and commenced within 2 years after the date of the dissolution. It continues as a body corporate for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or character by or against it and of enabling it gradually to settle and close its business, to collect and discharge its obligations, to dispose of and convey its property, and to distribute its assets, but not for the purpose of continuing the business for which it was established.
In sum, a dissolved Nevada corporation is permitted to prosecute any remedy or cause of action available to or against it arising before its dissolution and commenced within 2 years after the date of dissolution. In applying Nev. Rev. Stat. Ann. sec. 78.585 (Michie 1994) to the facts presented, we note as an initial matter that petitioners' liabilities for the Federal income taxes disputed herein in all likelihood represent a remedy or cause of action available to or against petitioners or their directors, *233 officers, or shareholders arising before their respective dissolutions. See, e.g., Brannon's of Shawnee, Inc. v. Commissioner, supra at 115-116. On the other hand, as explained in more detail below, we are unable to conclude that the cause of action underlying this proceeding was commenced within 2 years of the dates that petitioners were dissolved.[8]
The record shows that petitioners were dissolved in March 1992. Although examinations were conducted during the 2-year period immediately following petitioners' dissolution, those examinations were closed without the issuance of 30-day letters. Significantly, the deficiency notices underlying these proceedings were not mailed to petitioners until July 14, 1994, several months after the expiration of the 2-year period prescribed in Nev. *234 Rev. Stat. Ann. sec. 78.585 (Michie 1994). Consistent with cases such as Badger Materials, Inc. v. Commissioner, 40 T.C. 725 (1963), withdrawn in part and modified 40 T.C. 1061 (1963), the events described above do not support a finding that the remedy or cause of action underlying this proceeding was commenced by or against petitioners during the 2-year period following their dissolution. In Badger Materials, Inc. v. Commissioner, supra, the taxpayer was dissolved under Wis. Stat. Ann. section 180.787 (1955), which provides that, upon dissolution, a Wisconsin corporation ceases to exist except for the prosecution of suits or other proceedings commenced within 2 years of the date of dissolution. [9] Subsequent to the date that the taxpayer was dissolved, its former treasurer executed consents purporting to extend the period of limitations for assessment of Federal tax liabilities with respect to the taxpayer's taxable years ending October 31, 1955, and October 31, 1956. While an examination was conducted (including an informal conference) during the applicable 2-year winding-up period, no further action was taken at that *235 time. Several months after the expiration of the 2-year period, however, the Commissioner issued a deficiency notice to the taxpayer and notices of transferee liability to various transferees. Under the circumstances presented in that case, we held that we lacked jurisdiction over the taxpayer because no suit or proceeding has been commenced within 2 years of the taxpayers' dissolution, and, therefore, no person had the capacity under Wisconsin law to file the petition on the taxpayers' behalf. See Badger Materials, Inc. v. Commissioner, 40 T.C. 1061, 1062. In so holding, we did not regard the taxpayer as having commenced a proceeding within the 2-year winding-up period by virtue of: (1) The taxpayer's filing of an application for the carryback of a net operating loss to its taxable year 1955, and (2) the proposed partial disallowance of the *236 net operating loss deduction as set forth in the Commissioner's letter scheduling the previously mentioned informal conference meeting. Id. Instead, we characterized the informal conference letter, and the meeting which followed, as "procedural matters" preliminary to the commencement of a suit or proceeding. Id. at 732. The facts of Badger Materials, Inc. v. Commissioner, supra, may be distinguished from those of Field v. Commissioner, 32 T.C. 187 (1959), affd. 286 F.2d 960 (6th Cir. 1960). The issue for decision in Field concerned the validity of certain consents (executed on behalf of a dissolved Michigan corporation) extending the period for assessment of Federal tax liabilities. Several events occurred in Field during the applicable 3-year winding-up period following the corporation's dissolution. In particular, after the Commissioner issued 30-day letters proposing deficiencies in the corporation's taxes, the corporation first filed protests, and later executed waivers of restrictions on assessment, thereby consenting to the assessment and collection of tax deficiencies. Id. at 204-205. *237 Further, once the Commissioner made an assessment with respect to the taxes and made a demand for payment, the corporation responded by submitting an offer in compromise. Id. Considering all of these developments, we held that a proceeding was commenced during the applicable winding-up period, and, thus, the corporation in question continued to exist under Michigan State law. In Badger Materials, Inc., by contrast, no such developments occurred, and Field v. Commissioner was distinguished on that basis. See 40 T.C. at 732. As we see it, the instant case shares much in common with the factual situation presented in Badger Materials, Inc. v. Commissioner, supra, and bears little resemblance to Field v. Commissioner, supra. In sum, respondent simply opened and closed an examination with respect to petitioners' tax liabilities during the winding-up period. Significantly, the deficiency notices in question were mailed to petitioners more than 2 years after petitioners' dissolution. Under the circumstances, we are unable to conclude the cause of action was commenced by or against petitioners during the 2-year *238 winding-up period following petitioners' dissolutions. Badger Materials, Inc. v. Commissioner, supra; Lee Enterprises, Inc. v. Commissioner, T.C. Memo. 1992-629; see Great Falls Bonding Agency, Inc. v. Commissioner, 63 T.C. 304 (1974); Malone & Hyde, Inc. v. Commissioner, T.C. Memo. 1992-661; Bourque v. Commissioner, T.C. Memo. 1980-286. Petitioners (through their former officers) have not articulated a sound argument in opposition to respondent's motions to dismiss. Rather, petitioners maintain that respondent should be precluded from issuing a deficiency notice to a dissolved corporation. As we observed in Great Falls Bonding Agency, Inc. v. Commissioner, supra at 306: At first blush, it does seem anomalous that respondent would issue a statutory notice of deficiency to a taxpayer and then turn around and say that there is no taxpayer who can petition this Court for a redetermination of the determined deficiency -- as * * * [respondent] has done here. Yet, section 6212(b)(1) is explicit in its language which permits respondent, *239 in the absence of a notice of fiduciary relationship, to send a notice of deficiency to a corporation which has terminated its existence -- as has the petitioner.
There being no indication that petitioners provided respondent with notices of a fiduciary relationship under sections 6903 and 6212(b)(1), respondent was justified in issuing the disputed deficiency notices directly to petitioners notwithstanding their dissolution. Consistent with the preceding discussion, we shall grant respondent's Motions to Dismiss for Lack of Jurisdiction on the ground that petitioners and their respective former officers lack capacity under Rule 60(c) to invoke this Court's jurisdiction. [10]
*240 To reflect the foregoing, Orders granting respondent's motions to dismiss for lack of jurisdiction will be entered in each docket. Footnotes
1. Since the three related dockets present a common jurisdictional issue, we resolve the separate motions in a combined opinion for the following petitioners: Insulators, Inc., docket No. 17594-94; J & A Enterprises, Inc., docket No. 17595-94.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The certificate of dissolution of J & A Enterprises, Inc., was executed by John A. Meisner as president and Annette M. Meisner as secretary. The certificate of dissolution of Insulators, Inc., was signed by John A. Meisner as president and secretary. ↩
4. Nev. Rev. Stat. Ann. sec. 78.580↩ (Michie 1994) provides that, where the board of directors of a Nevada corporation decides that the corporation should be dissolved, the board of directors shall file a certificate of dissolution with the secretary of state. Assuming certain procedural formalities are satisfied, the secretary of state shall issue a certificate that the corporation is dissolved. 5. The certificate of dissolution of Comfort Home Builders, Inc., was executed by John A. Meisner as president and Annette M. Meisner as secretary.↩
6. The amended petitions in docket Nos. 17592-94 and 17595-94 were executed by Annette M. Meisner as a former officer of the respective petitioners. The amended petition in docket No. 17594-94 was executed by John A. Meisner as a former officer of petitioner. At the time the amended petitions were filed, each petitioner maintained a mailing address in Las Vegas, Nevada.↩
7. The statements were signed by Annette Meisner for docket Nos. 17592-94 and 17595-94 and by John A. Meisner for docket No. 17594-94.↩
8. The parties have not cited any cases involving the question of what constitutes the commencement of a remedy or cause of action within the meaning of Nev. Rev. Stat. Ann. sec. 78.585↩ (Michie 1994).
9. The language of Wis. Stat. Ann. sec. 180.787 (1955) is quite similar to that appearing in Nev. Rev. Stat. Ann. sec. 78.585↩ (Michie 1994).
10. We note that the merits of petitioners' tax liabilities, if any, as determined by respondent in the notices of deficiency issued herein, may still be litigated in this Court in the event respondent later issues notices of transferee liability to the appropriate persons. Sec. 6901; Great Falls Bonding Agency, Inc. v. Commissioner, 63 T.C. 304, 307↩ (1974).